FILED ✓ LODGED
RECEIVED COPY

APR 03 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY [signature] DEPUTY

☒ FILED ☐ LODGED

Dec 16 2024

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

GARY M. RESTAINO
United States Attorney
District of Arizona
TODD M. ALLISON
Assistant U.S. Attorney
Arizona State Bar No. 026936
WILLIAM G. VOIT
Assistant U.S. Attorney
Arizona State Bar No. 025808
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Todd.Allison@usdoj.gov
Email: William.Voit@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
United States Department of Justice
National Security Division
CHRISTOPHER M. RIGALI
Trial Attorney
District of Columbia Bar No. 1034475
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: 202-616-2652
Email: Christopher.Rigali2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Vasilii Sergeyevich Besedin aka Vasiliy Besedin,<br>Defendant. | No. CR-23-00770-02-PHX-DWL(MTM)<br><br>**PLEA AGREEMENT** |

Plaintiff, the United States of America, and the defendant, VASILII SERGEYEVICH BESEDIN, hereby agree to resolve this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count Three of the Indictment. Count Three of the Indictment charges the defendant with Conspiracy to Export Items from the United States Without a License in Violation of the Export Control Reform Act, a violation of Title 50, United States Code (U.S.C.), §§ 4819(a)(1), 4819(a)(2)(A)-(G) and (J), 4819(b); and Title 15, Code of Federal Regulations, Parts 736.2(b)(1), (4), and (6), and 746.8(a)(1), a Class C felony offense. The defendant agrees to forfeiture of the specific property identified in the Indictment (as supplemented by the First and Second Bills of Particulars filed by the United States, Docs. 34 and 35).

2. **MAXIMUM PENALTIES**

a. A violation of 50 U.S.C. §§ 4819(a)(1) & 4819(b) is punishable by a maximum fine of $1,000,000 per 50 U.S.C. § 4819(b), a maximum term of imprisonment of 20 years, or both, and a term of supervised release of up to three years. A maximum term of probation is five years (including a minimum term of one year if probation is imposed).

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. §§ 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d. The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States. The defendant agrees that defendant has discussed this eventuality with defendant's attorney. The defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

3. **<u>AGREEMENTS REGARDING SENTENCING</u>**

a. <u>Non-Binding Recommendations.</u> The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

b. <u>Stipulation Regarding the Defendant's Sentence</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate that defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). This stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the stipulated cap, or the court from imposing a sentence below the stipulated cap.

c. Stipulation: Base Offense Level Calculation (§ 2M5.1). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's base offense level for Count 3 is a level 26, based on U.S.S.G. § 2M5.1(a)(1)(A), as the defendant's offense involved the evasion, or intended evasion, of national security export controls.

d. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

e. Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

4. **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: Counts One, Two, and Four of the Indictment.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

5. **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under

18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall

be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s), including the following property:

> The specific property listed in the Forfeiture Allegation of the Indictment (Doc. 7), the United States' First Bill of Particulars (Doc. 34), and the United States' Second Bill of Particulars (Doc. 35), all of which are incorporated by reference hereto.

c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8, U.S.C. § 1324(b); Title 18 U.S.C. §§ 924(d), 981, 982,and 2253; Title 21, U.S.C. §§ 853 and 881; Title 28, U.S.C. § 2461(c); and Title 50, U.S.C. § 4819(d).

d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any

fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property. The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

h. The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, the

defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## 9. ELEMENTS

### Conspiracy to Export Items from the United States Without a License in Violation of the Export Control Reform Act

To prove the crime of *conspiracy to export items from the United States without a license in violation of the Export Control Reform Act*, the United States must prove the following elements beyond a reasonable doubt:

1. Beginning in or about May 2022 and continuing to on or about May 11, 2023, in the District of Arizona and elsewhere, there was an agreement between two or more persons to commit the crime of exporting items from the United States without a license in violation of the Export Control Reform Act;

2. The defendant became a member of the conspiracy knowing that one of its objects was to commit the crime of exporting items from the United States without a license in violation of the Export Control Reform Act; and

3. The defendant joined the conspiracy with the intent to further its unlawful purposes.

The elements of *exporting items from the United States without a license in violation of the Export Control Reform Act* are as follows:

1. The defendant exported, attempted to export, or caused to be exported an item from the United States, namely a Goodrich Main Landing Gear Brake Assembly, Part Number 2-1740-1;

2. An export license was required for the item exported, attempted to be exported, or caused to be exported;

3. The defendant did not obtain from the United States Department of Commerce a license or written authorization for the export prior to exporting the item; and

4. The defendant acted willfully.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

> Starting in or around June or July 2022, through May 11, 2023, I, Vasilii Sergeyevich Besedin, conspired with my codefendant Oleg Sergeyevich Patsulya ("Patsulya") and at least three other participants, to export items from the United States to Russia without obtaining the required export licenses from the United States Department of Commerce. The basic outline of the scheme was to obtain requests for parts from Russian buyers—mainly commercial airline companies—and then to try and acquire and export the requested parts to Russia. To conceal the scheme, we made false representations about who our customers were and where they were located, and we also used straw buyer companies located overseas to conceal the ultimate source of funding.
>
> One of the items I conspired to export from the United States to Russia was a Goodrich Main Landing Gear Brake Assembly, Part Number 2-1740-1 (the "Goodrich Brake Assembly"), which is a carbon disc brake system used on Boeing 737 aircraft and controlled on the Commerce Control List under Export Control Classification Number ("ECCN") 9A991.d.
>
> At no time during the conspiracy did I or any of my coconspirators obtain an export license for the Goodrich Brake Assembly from the United States Department of Commerce. I knew during the conspiracy that I could not export the Goodrich Brake Assembly to Russia, and I took measures to try to conceal that we were sending the parts to Russia. Although the United States detained multiple shipments of the Goodrich Brake Assembly that we tried to export to Russia, we successfully exported at least one unit of the Goodrich Brake Assembly from the United States to Russia.
>
> Patsulya enlisted my help in locating airplane parts for interested buyers located both in and outside the United States. Starting in or around June or July 2022, when I was residing in South Florida, Patsulya enlisted my help

in locating various airplane parts and components and purchasing them for resale to various entities. Many of these resale transactions involved purchasing airplane parts for Russian commercial airline companies. I knew that Patsulya was communicating with individuals in Russia about supplying Russian airline companies with aircraft parts, including the Goodrich Brake Assembly, and Patsulya wanted my help in locating the airplane parts in the United States and negotiating with United States-based companies to purchase the parts. When I started helping Patsulya, I knew that the United States had imposed sanctions on Russia in response to Russia's invasion of Ukraine, and that these sanctions prohibited various items, including specific airplane parts, from being exported to Russia.

Patsulya and I used multiple online procurement marketplaces that specialized in purchasing and selling aircraft parts to identify United States-based and international companies who had inventory of the specific aircraft parts and components, including the Goodrich Brake Assembly. When we contacted United States-based companies, we provided false information that the parts were intended for countries other than Russia.

As one example, on or about August 8, 2022, Patsulya and I started communicating with an aircraft parts supply company based out of Arizona, referred to in the Indictment as "Arizona Company 1," about purchasing multiple units of the Goodrich Brake Assembly. After negotiating the prices of the multiple units of the Goodrich Brake Assembly with Arizona Company 1, Patsulya and I attempted to buy the Goodrich Brake Assemblies by sending Arizona Company 1 a purchase order and falsely filling out export compliance forms. At all relevant times, I knew that the multiple units of the Goodrich Brake Assembly that would be exported from the United States would ultimately end up in Russia.

On September 8, 2022, Patsulya and I traveled to Arizona to meet with representatives of Arizona Company 1 in an effort to close the deal for the units of the brake assembly. During our discussions with Arizona Company 1, Patsulya and I misrepresented that the aircraft parts were going be exported to Turkey, not their true intended destination, Russia. We made these false statements, both orally and in the export compliance forms, because we knew it was unlawful to export the items to Russia without proper authorization.

After I started to help Patsulya, I learned that Patsulya was receiving money sent from outside of the United States to American bank accounts to purchase and illegally send aircraft parts and components to Russia. I learned that Patsulya used shell companies in Turkey and Turkish bank accounts to conceal that the money had come from Russian airline companies' bank

accounts in Russia. When we purchased airplane parts from United States-based companies, including the Goodrich Brake Assembly, Patsulya used the money from his American bank accounts. Patsulya paid me for my help in locating and obtaining airplane parts to send to the Russian airline companies and funded my travel to United States-based aircraft parts companies to inspect and purchase aircraft parts.

Using money from Patsulya's American bank accounts, and in the course and in furtherance of the conspiracy, I purchased multiple aircraft parts and other aviation-related products, including many of the items listed in the United States' First and Second Bills of Particulars filed in this case. I am also aware that, during the course of the conspiracy, Patsulya acquired the 2023 BMW 740i with VIN WBA23EH05PCL79410 and the 2007 Sea Ray Sundance 380 Cruiser "Side Chick," with Hull Identification Number SERF1453L607 and USCG Vessel Identification Number 1198232, which are identified in the Forfeiture Allegation in the Indictment in this case.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

This agreement has been read to me in Russian, and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

///

///

///

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2/13/24
Date

VASILII SERGEYEVICH BESEDIN
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

I translated or had translated this agreement from English into Russian for the defendant on the 13th day of February, 2024.

2/13/24
Date

KEVIN BURNS
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

MATTHEW G. OLSEN
Assistant Attorney General
United States Department of Justice
National Security Division

3/18/24
Date

TODD M. ALLISON
WILLIAM G. VOIT
Assistant U.S. Attorneys

CHRISTOPHER M. RIGALI
Trial Attorney

## ACCEPTANCE BY THE COURT

12/16/2024
Date

HONORABLE DOMINIC W. LANZA
United States District Judge